Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
1970 Broadway, Suite 550
Oakland, CA 94612
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorney for Debtor
Ayo Akatugba

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of:<br><br>Ayo Akatugba<br><br>Debtor | Case No. 18-40285 RJN 13<br><br>CHAPTER 13<br><br>Debtor's Response and Opposition to Report and Declaration of SN Servicing and DRI, Regarding Debtor's Motion to Enforce the Terms of the Confirmed Plan, and for Violation of the Automatic Stay, and Violation of 3002.1 Against Creditor DRI Mortgage Opportunity Fund LP, SN Servicing Corporation, Morgan Stanley Mortgage Capital Holdings, and NewRez LLC, DBA Shellpoint Mortgage Servicing,<br><br>**Hearing:**<br>Date: December 4, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 201<br>1300 Clay Street, 2nd Floor,<br>Oakland, CA 94612<br>Judge Roger L. Efremsky |

Debtor hereby responds and opposes the Declaration and Report of SN Servicing and DRI Mortgage (Hereinafter "Creditors" or "SN") which was filed on November 13 2019, Docket number 76.

The Declaration of SN Servicing does not move this case any closer to resolution than before it was filed because it does not identify all the known errors, nor does it explain the spreadsheet with enough detail to be useful in reconciling the loan to put the account back to the

1

proper status. The declaration was made by SN's general counsel, who is an unqualified witness without firsthand knowledge, and it is made about a spreadsheet for which no valid evidentiary foundation has been laid.

Further discovery and an evidentiary hearing are necessary in this case to get to the truth and to make the Debtor whole because it is now plainly evident that SN Servicing is fundamentally incapable of properly accounting for the loan payments according to the terms of the Note, Deed of Trust, and Bankruptcy Code.

1. **DECLARATION DOES NOT COMPLY WITH COURT ORDER**

This Court ordered Creditors to submit a detailed accounting and going line by line through the spreadsheets explaining what happened: "If an error was made, acknowledge it, but then show where it's been corrected, but if it hasn't been corrected, explain to the Court what you intend on doing with that."

SN Servicing's report falls short of the required information because the report only admits to a few errors when there are actually dozens. SN admits that the first three post-petition direct mortgage payments were misapplied to pre-petition arrears. However, there are dozens of other entries that are obvious and demonstrable violations, and there are numerous others that may be found to be violations after expert analysis.

The fundamental problem here is that this declaration and report does not get this case any closer to resolution. SN makes a few unsubstantiated allegations that the loan was reconciled, but there is no evidence to support such claims.

Three things need to happen to fully resolve this case. First, there must be an identification of all accounting errors. Second, based on those identified errors, damages must be ascertained and calculated. Third, the errors must be corrected.

The evidence in this case strongly suggests that both SN Servicing and Shellpoint are fundamentally incapable of correctly accounting for loan payments. If they were capable of doing so, then the declarations would be far more detailed, and there would be actual evidence from their servicing systems proving that adjustments had been properly made. But such is not the case.

This problem goes much deeper than the servicers simply not wanting to admit to a few accounting errors. The problem here appears to be that SN Servicing does not have systems in place to properly account for loan payments in a bankruptcy case. The following items are just a few examples of many serious errors and violations that are unacknowledged and unfixed.

Paragraph 70 of SN's Declaration describes $1,095.96 in funds from the chapter 13 trustee being used to pay post-petition escrowed taxes and insurance. This is an undeniable and serious violation of the terms of the plan, a violation of the automatic stay, and violates the terms of the Note and Deed of Trust. SN doesn't acknowledge this as an error, nor does SN state how it was fixed, or could be fixed.

Every post-petition direct mortgage payment was improperly applied to the loan in an amount different than the allowed monthly amount of $1,634.69 as stated in the proof of claim, and therefore, each and every monthly payment applied by SN from the March 2018 payment through the May 2019 payment were each a violation of Rule 3002.1 because there was no valid notice of mortgage payment change. Each of these was a violation of the automatic stay for having told the Debtor to pay more than the approved amount in the proof of claim. SN told Debtor to pay $1,711.52 and then later $1,717.70.

Virtually every adjustment that SN made to the loan on June 1, 2018 in spreadsheet lines 15-23 are incorrect and not consistent with the amounts in the Proof of Claim for various components of the pre-petition arrears, which are violations of the plan. The declaration of successor servicer Shellpoint (Docket #77) identifies the incorrect calculations when they are inconsistent with the proof of claim. These won't all be repeated here, but suffice it to say that there are numerous.

As one example, SN gives only limited detail on the June 2018 entries and does not explain sufficiently how any of the alleged adjustments were calculated. For example, Paragraph #4 of the SN declaration identifies an adjustment of -$6,927.92 as an "escrow adjustment" which "set up the escrow balance for the loan." This language is totally useless to describe what was happening. The declaration of Shellpoint/ UMB Bank that was filed on the same day, as Docket Number 77, addresses the same entry in its Paragraph #18, and explains that this entry of

3

$6,927.92 is intended to reflect that the escrow account was negative when the case was filed, but it also points out that this amount is "not consistent with the escrow balance reflected in the Proof of Claim NO. 6-1." The Proof of claim states in the summary headings of the Mortgage Proof of Claim Attachment that the pre-petition escrow deficiency for funds advanced is $4,514.72, and a projected escrow shortage of $2,832.83. These do not add up to $6,927.92, nor is there any other explanation. Stated simply, SN's adjustments conflicted with the proof of claim, which is a violation of the plan and the automatic stay.

These improper adjustments occur again at the end of SN's servicing of the loan, on May 1, 2019 there are a number of entries adjusting balances, and these are also inaccurate. These include spreadsheet line entries 79-87. There is no explanation as to how these were calculated.

These are just a few examples of undisclosed errors. There are dozens more.

## 2. DECLARATION IS INADMISSIBLE

A declaration or affidavit is a substituted for direct testimony at trial, and is subject to the same rules of evidence. Federal Rule of Evidence 602 provides that "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

The declaration is made by Bill Fogleman, identified as general counsel for SN Servicing. Mr. Fogleman is an attorney, and is not someone with actual firsthand knowledge of the accounting methods and procedures and facts at issue here. He did not make the accounting adjustments at the time they were made. There is virtually nothing in the opening paragraph of the declaration that qualifies him to make a declaration on the subject. The mere statement that "I have personal knowledge of the General Loan History with respect to Ayo H. Akatugba's loan account" is not enough to establish the kind of knowledge required to give admissible evidence. Mr. Fogleman does not state that his duties include record keeping, or accounting, or applying loan payments, or in the bankruptcy compliance department. It does not state or show that he has knowledge of SN's recordkeeping, or reconciliation, or bankruptcy procedures, practices, or policies.

4

Mr. Fogleman lays no foundation for the spreadsheet attached to the declaration. It is inadmissible hearsay under Rule 801 because it was created out of court and is offered to prove the truth of matters asserted by Mr. Fogleman—namely that SN only made three accounting errors, but quickly fixed them. Mr. Fogleman does not lay any foundation for a business record exception to the hearsay rule.

Mr. Fogleman's lack of knowledge is also apparent from the fact that the entire declaration is merely the use of words to explain what the spreadsheet already shows by using numbers. It does not add much useful information as directed by the Court.

The reason that a qualified witness is important is that this case will require deposing the actual persons knowledgeable about SN's recordkeeping and bankruptcy compliance regarding this loan account in order to get to the bottom of this.

This present declaration is not valid admissible evidence by a qualified witness and therefore cannot be relied on by this Court to resolve the Debtor's motion at this point in time.

### 3. NO EVIDENCE THAT ANYTHING WAS FIXED

SN Servicing claims that it reconciled the loan in June 2018, but there is no actual evidence that this was done as claimed, or that it was done correctly. There is nothing in the spreadsheet that shows the reversal or reapplication of the first three post-petition direct mortgage payments to the correct post-petition months. It only shows that starting in June 2018 (the fourth month of the plan) SN began to apply post-petition payments to the corresponding months.

Because SN Servicing and DRI no longer service the loan, they cannot take any present or future action to correct any errors. Their actions are now set in stone. However, it is still important to identify all errors, and SN has not done that. SN only claims that it reconciled the account, but has not presented anything but the spreadsheet attached to the declaration to support that claim. Glaringly absent is any description of the manner in which the June 2018 adjustments were calculated, with regard to entry numbers 15 through 23. This is a critical issue because the manner in which the spreadsheet data was transferred to successor servicer Shellpoint is obviously a problem because it appears that it was sent in a static form, without instructions.

The evidence shows that after June 2018 nothing was fixed, because SN still charged the Debtor $1,711.52 every month without a valid notice of mortgage payment change. Each of these instances is a violation of Rule 3002.1, and a violation of the automatic stay. Each of these payments of $1,711.52 was applied to the loan as $1,690.47 for the contractual payment comprised of interest, principal, and escrow, and then the remaining $21.05 was held in a suspense account. This goes on every month for the entire spreadsheet, the contractual payment amount shown does not match the proof of claim, or the amount that SN is telling the Debtor to pay. This is a clear indication that the issues were not fixed as claimed.

### 4. **VIOLATIONS OF THE NOTE AND DEED OF TRUST**

This spreadsheet and declaration show that SN is violating the terms of the Note and Deed of Trust in how it applied the payments. Paragraphs Numbers 1 and 2 of the Deed of Trust attached to the Proof of Claim 6 describe how payments are required to be applied to the loan. The payments are to be applied in the order of priority as follows: "(a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [Escrow]. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, then to reduce the principal balance of the Note."

Put more simply, the funds are to be applied to interest, then principal, then escrow first to pay up all prior due monthly payments before funds can be applied to fees or charges. But Paragraphs 34 and 35 of SN's declaration shows that SN applied $308.15 of funds from the chapter 13 trustee to "arrearage prior servicer late charge" and $208.11 to "arrearage other." These do not appear to be principal, interest, or escrow items.

The reason this is important is that by applying the funds to interest and principal first, it reduces the interest paid in the future because the interest each month is calculated based on the outstanding unpaid principal, and if funds are applied to late fees, the principal stays higher, resulting in higher interest paid going forward. The late fees are to be paid last, after everything else is caught up for interest, principal, and escrow according to the monthly periodic payments

due, because those fees don't grow or accrue interest, so these wait until the end to get paid.

## Conclusion

This spreadsheet is wholly inadequate for the purpose which this Court intended, which was to identify the errors and show how they could be fixed through admissible evidence upon which this Court could rely to resolve the motion. Further discovery and an evidentiary hearing will be required to identify all the errors and to ensure that the problem gets fixed. This is particularly important because the declaration of subsequent servicer Shellpoint (Docket #77) filed concurrently here plainly demonstrates that the errors have not been fixed.

DATED: November 20, 2019

/s/ Andrew J. Christensen
Andrew J. Christensen
Attorney for Debtor