1  Andrew J. Christensen (SBN: 260748)
   Law Offices of Andrew J. Christensen, P.C.
2  3608 Grand Ave. Suite 1
   Oakland, CA 94610
3  Tel: (510) 761-7183
   Fax: (510) 680-3430
4  Andrew@CaliforniaHomeLawyer.com

5  Attorney for Debtor
   Ayo Akatugba
6

7                    UNITED STATES BANKRUPTCY COURT
8                    NORTHERN DISTRICT OF CALIFORNIA

9
   In the Matter of:                        Bankruptcy Case No. 18-40285 WJL 13
10
   Ayo Akatugba                             CHAPTER 13
11
                                            **Debtor's Motion for Summary Judgment,**
12                    Debtor                 **or in the Alternative, Summary**
                                            **Adjudication, Against UMB BANK,**
13                                          **National Association as Trustee for PRL**
                                            **Title Trust 1, and NewRez LLC, DBA**
14                                          **Shellpoint Mortgage Servicing, Regarding**
                                            **Debtor's Motion for Violations of RESPA,**
15                                          **TILA, CFPB Regulation X and Z, and**
                                            **FDCPA, and Violation of the Automatic**
16                                          **Stay, Violation of the Confirmed Plan,**
                                            **Contempt for Violation of Settlement**
17                                          **Agreement, Violation of Bankruptcy Rule**
                                            **3002.1, and Contempt of the Discharge**
18                                          **Injunction §524(i).**

19                                          **Hearing: Zoom/Telephonic or In Person**
                                            Date: September 27, 2023, 10:30 AM
20                                          Place: Courtroom 220
                                            1300 Clay Street, 2nd Floor Oakland, CA
21                                          Judge William Lafferty

22         Debtor Ayo Akatugba moves for summary judgment or in the alternative, summary

23  adjudication against Secured Creditors UMB BANK, National Association as Trustee for PRL Title

24  Trust 1, ("UMB Bank") and its servicing agents NewRez LLC, DBA Shellpoint Mortgage Servicing

25  ("Shellpoint") (hereinafter collectively "Creditors").   This motion is made pursuant to FRCP 56,

26  and BR 7056 applicable to this contested matter pursuant to BR 9014. This Motion is supported by

27  the Declaration of Debtor Ayo Akatugba, her Counsel Andrew J. Christensen, the attached exhibits,

28  the Requests for Admissions served by Debtor on Shellpoint and UMB Bank that have been deemed

                                            1

admitted by operation of law for failure to serve timely responses, and all documents found on the docket in this case of which this Court may take judicial notice.

Debtor seeks summary judgment or adjudication that Creditors are liable for violation of the Truth in Lending Act ("TILA") 15 U.S.C. § 1638(f) and 15 U.S.C. § 1640, and CFPB Regulation Z 12 C.F.R. § 1026.41.

Debtor seeks summary judgment or adjudication that Creditors are liable for violating Real Estate Settlement Procedures Act "RESPA" under 12 U.S.C. §2614 and for violating 12 U.S.C. §2605, and for CFPB Regulation X, 12 CFR §1024.17.

Debtor seeks summary judgment or adjudication that Creditors are liable for violating the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §1692e and §1692f.

Debtor seeks summary judgment or adjudication that Creditors are liable for violating the automatic stay under 11 U.S.C. §362(a).

Debtor seeks summary judgment or adjudication that Creditors are liable for violating the terms of the confirmed chapter 13 plan pursuant to §105.

Debtor seeks summary judgment or adjudication that Creditors in contempt under §105 for violating a Stipulated Settlement Order in this case.

Debtor seeks summary judgment or adjudication that Creditors are liable for violating Bankruptcy Rule 3002.1 and to disallow any post-petition fees and escrow shortages for the entire bankruptcy case caused by improper Rule 3002.1 notices that failed to include notice of amounts being charged.

Debtor seeks summary judgment or adjudication that Creditors are in contempt of the discharge injunction pursuant to 11 U.S.C. § 524(i).

Pursuant to Federal Rules of Evidence section 201, Debtor respectfully requests that this Court take judicial notice of all documents on the docket and claims register in this bankruptcy case.

DATED: August 23, 2023

/s/ Andrew J. Christensen

Andrew J. Christensen
Attorney for Debtor Ayo Akatugba

2

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
3608 Grand Ave. Suite 1
Oakland, CA 94610
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorney for Debtor
Ayo Akatugba

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of: | Bankruptcy Case No. 18-40285 WJL 13 |
| Ayo Akatugba | CHAPTER 13 |
| Debtor | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF Debtor's Motion for Summary Judgment, or in the Alternative, Summary Adjudication, Against UMB BANK, National Association as Trustee for PRL Title Trust 1, and NewRez LLC, DBA Shellpoint Mortgage Servicing, Regarding Debtor's Motion for Violations of RESPA, TILA, CFPB Regulation X and Z, and FDCPA, and Violation of the Automatic Stay, Violation of the Confirmed Plan, Contempt for Violation of Settlement Agreement, Violation of Bankruptcy Rule 3002.1, and Contempt of the Discharge Injunction §524(i).** |
| | **Hearing: Zoom/Telephonic or In Person**<br>Date: September 27, 2023, 10:30 AM<br>Place: Courtroom 220<br>1300 Clay Street, 2nd Floor Oakland, CA<br>Judge William Lafferty |

Debtor Ayo Akatugba submits this memorandum of points and authorities in support of

summary judgment or in the alternative, summary adjudication against Secured Creditors UMB

BANK, National Association as Trustee for PRL Title Trust 1, ("UMB Bank") and its servicing

agents NewRez LLC, DBA Shellpoint Mortgage Servicing ("Shellpoint") (hereinafter collectively

"Creditors").

# **Table of Contents**

LEGAL STANDARD ................................................................................................ 2

FACTS ................................................................................................................ 2

ARGUMENT ....................................................................................................... 4

    1.    REQUESTS FOR ADMISSIONS OF SHELLPOINT AND UMB BANK ARE DEEMED ADMITTED FOR THE FAILURE TO SERVE TIMELY RESPONSES ................. 4

    2.    SUMMARY JUDGMENT BASED ON DEEMED ADMISSIONS IS PROPER . 4

AGENCY BETWEEN SHELLPOINT AND UMB BANK ................................................. 5

    A.    REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT ................... 6

    B.    REQUESTS FOR ADMISSION ADMITTED BY UMB BANK ..................... 6

DOCUMENTS ADMITTED ADMISSIBLE ................................................................. 6

    3.    VIOLATION OF THE AUTOMATIC STAY ....................................... 6

    A.    REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT ................... 9

    B.    REQUESTS FOR ADMISSION ADMITTED BY UMB BANK ..................... 9

    4.    VIOLATION OF THE CONFIRMED PLAN ....................................... 10

    A.    REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT ................. 11

    B.    REQUESTS FOR ADMISSION ADMITTED BY UMB BANK ................... 12

    5.    CONTEMPT FOR VIOLATION OF STIPULATED SETTLEMENT ORDER . 12

    A.    REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT ................. 14

    B.    REQUESTS FOR ADMISSION ADMITTED BY UMB BANK ................... 14

    6.    VIOLATION OF BANKRUPTCY RULE 3002.1 ................................ 15

    A.    REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT ................. 17

    B.    REQUESTS FOR ADMISSION ADMITTED BY UMB BANK ................... 17

7.     CONTEMPT OF THE DISCHARGE INJUNCTION §524(I). ............................. 18

    A.    REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT.................. 19

    B.    REQUESTS FOR ADMISSION ADMITTED BY UMB BANK .................... 19

8.     TILA AND CFPB Regulation Z.......................................................................... 20

    A.    REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT.................. 20

    B.    REQUESTS FOR ADMISSION ADMITTED BY UMB BANK .................... 21

9.     RESPA AND CFPB Regulation X ........................................................................ 22

    A.    REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT.................. 24

    B.    REQUESTS FOR ADMISSION ADMITTED BY UMB BANK .................... 24

10.    FDCPA ................................................................................................................ 25

    A.    REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT.................. 26

    B.    REQUESTS FOR ADMISSION ADMITTED BY UMB BANK .................... 26

CONCLUSION ................................................................................................................ 26

# Table of Authorities

**Cases**

*Canizales v. Firm*, No. SACV 22-00208 JVS (DFMx), 2022 U.S. Dist. LEXIS 92786, at *6 (C.D. Cal. Apr. 20, 2022) ................................................................................................. 20

*Donohue v. Quick Collect, Inc*., 592 F.3d 1027, 1030 (9th Cir. 2010) ........................... 25

*In re Chappell*, 984 F.2d 775, (7th Cir. 1993) ................................................................ 11

*In re Ford*, 522 B.R. 842 (Bankr. D.S.C. 2015) .............................................................. 10

*Padilla v. GMAC Mortg. Corp. (In re Padilla)*, 389 B.R. 409, (Bankr. E.D. Pa. 2008) ................ 11

*Reichert v. Nat'l Credit Sys., Inc*., 531 F.3d 1002, 1005 (9th Cir. 2008) ....................... 25

*Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002) ..................... 13

*Robinson v. Managed Accts. Receivables Corp*., 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009) ... 25

*Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019) ...................................................... 19

*United States v. Richman (In re Talbot)*, 124 F.3d 1201, (10th Cir. 1997) .................... 11

*Wynne v. Aurora Loan Servs., LLC (In re Wynn)*, 422 B.R. 763, 769 (Bankr. M.D. Fla. 2010) .... 13

**Statutes**

11 U.S.C. §362(a)(3) ......................................................................................................... 8

11 U.S.C. §362(a)(5) ......................................................................................................... 8

11 U.S.C. §362(a)(6) ......................................................................................................... 6

12 C.F.R. § 1026.41 ......................................................................................................... 20

12 CFR §1024.17 ............................................................................................................ 22

12 CFR §1024.17(c) ........................................................................................................ 23

12 CFR §1024.17(f)(3)(ii) ............................................................................................... 23

12 U.S.C. §2605 .............................................................................................................. 22

12 U.S.C. §2605(f)(2) ..................................................................................................... 23

12 U.S.C. §2605(k)(1)(E) ............................................................................................... 23

12 U.S.C. §2605(l) .......................................................................................................... 23

12 U.S.C. §2614 .............................................................................................................. 22

15 U.S.C. § 1692(e) .................................................................................................. 25

15 U.S.C. §1026.41(a) ............................................................................................. 20

15 U.S.C. §1026.41(a)(2) ........................................................................................ 20

15 U.S.C. §1641 ...................................................................................................... 20

15 U.S.C. §1692a .................................................................................................... 25

15 U.S.C. §1692f .................................................................................................... 25

15 U.S.C. §2605(f) ................................................................................................. 22

CFPB Regulation X ................................................................................................ 22

Fair Debt Collection Practices Act "FDCPA" ....................................................... 25

Real Estate Settlement Procedures Act "RESPA" ................................................. 22

This Motion is based on undisputed factual evidence, judicial admissions of Creditors in this case, and Requests for Admissions ("RFA") that have been deemed admitted for failure of Shellpoint and UMB Bank to timely respond. The RFAs were served in February 2023. UMB Bank has not responded to the RFAs or any other discovery in this case. Shellpoint served untimely responses to the RFAs 107 days late without any explanation for the delay.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The moving party must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## FACTS

On January 12, 2023, Debtor filed *Debtor's Motion for Sanctions Against UMB BANK, National Association as Trustee for PRL Title Trust 1, and NewRez LLC, DBA Shellpoint Mortgage Servicing, and Rushmore Loan Management Services LLC, for Violations of RESPA, TILA, CFPB Regulation X and Z, and FDCPA, and Violation of the Automatic Stay, Violation of the Confirmed Plan, Contempt for Violation of Settlement Agreement, Violation of Bankruptcy Rule 3002.1, and Contempt of the Discharge Injunction §524(i)*. Docket 274. (the "Motion for Sanctions"). The Motion for Sanctions is a contested matter under BR 9014, and discovery and summary judgment rules apply. The Motion for Sanctions was amended to add the current owner of the loan, US Bank, on July 6, 2023, docket 359.

Debtor served 55 Requests for Admission ("RFA"), Set One, on Shellpoint on February 10, 2023, by mail and email. **Exhibit 60**. Debtor served 96 Requests for Admission, Set One, on UMB Bank on February 10, 2023, by mail and email. **Exhibit 61**. Responses were due on March 15, 2023. Shellpoint served responses three and a half months later on June 30, 2023. **Exhibit 62**. Shellpoint did not seek or obtain an extension of time before the deadline passed, and the responses were untimely by 107 days. UMB Bank has never served any responses to the RFAs, nor to any

Case: 18-40285    Doc# 386    Filed: 08/23/23    Entered: 08/23/23 09:10:36    Page 8 of 32

discovery requests, including interrogatories and requests for production of documents. [Decl. Christensen¶1-5].

Debtor's counsel advised Counsel for Shellpoint and UMB Bank that their failure to respond to RFAs meant that they were deemed admitted. This occurred twice. First, in a phone call between Debtor's counsel Andrew J. Christensen and Creditors' counsel Jacqueline Foroutan on March 29, 2023, which was about two weeks after responses were due, Debtor's counsel informed Foroutan that the deadline to respond to discovery had passed without them seeking an extension, which carried the penalties specified in the Federal Rules. Foroutan did not ask for an extension, but merely claimed they were working on the responses and would get them served when they could. [Decl. Christensen ¶6].

The second discussion was when Counsel for the parties also held a conference call with Ariel Stern and Jacqueline Foroutan and Debtor's counsel on July 13, 2023, to meet and confer about Shellpoint's untimely discovery responses that were served on June 30, 2023. A large part of that call addressed the issue of the RFAs being deemed admitted, and Debtor's counsel informed them that the failure to timely answer RFAs meant that they are deemed admitted. Stern and Foroutan admitted that they knew that it would require a motion to be relieved of the admissions, but made a long argument about how their position is that there was a tacit, unspoken agreement to an open ended discovery timeline without deadlines because Debtor had not moved to compel discovery yet. Debtor's counsel vigorously disagreed with this absurd argument. [Decl. Christensen ¶7].

Creditor's counsel followed up on the call with a letter purporting to confirm that there was an "open extension" that was not disputed by Debtor's counsel on the call, but this is a bad faith attempt to make a false record, and Debtor's counsel responded to that letter to make it clear that there was never any such agreement to any extension. Debtor did not agree to give any retroactive extension of any deadline. [Decl. Christensen ¶8]. Debtor offered to stipulate to Creditors' liability in order to avoid further discovery or litigation costs since Shellpoint and UMB Bank do not seriously dispute liability in the case. [Decl. Christensen ¶9]. This offer was made in order to save the parties fees and costs to prove liability that is not seriously disputed, in order to avoid what

happened in the litigation a few years ago in this same case on the same type of wrongdoing. Creditors refused to stipulate to liability, refused to amend their responses, refused to give a date by which they would serve amended responses or serve documents.  [Decl. Christensen ¶10].

<b><u>ARGUMENT</u></b>

**1. <u>REQUESTS FOR ADMISSIONS OF SHELLPOINT AND UMB BANK ARE DEEMED ADMITTED FOR THE FAILURE TO SERVE TIMELY RESPONSES</u>**

All RFA's served on Shellpoint and UMB Bank are deemed admitted by operation of law under FRCP 36, applicable to this contested matter pursuant to BR 7036. "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." FRCP 36(a)(3).

"A matter admitted under this rule is conclusively established[.]" FRCP 36(b).

Shellpoint has not given any valid excuse for the delay of 107 days.  The delay can only be explained as either an intentional act done because liability is not in genuine dispute in this case, or else the delay is bad faith abuse of discovery because no effort was made to obtain an extension, the delay was 107 days, the responses are essentially just boilerplate objections with little to no substance, and they only produced 408 pages, when they should have produced over 3,000 pages for just this case, which does not include the loan histories for all chapter 13 cases where arrears are being paid in the Northern and Central Districts of California, which is likely many tens of thousands of pages. [Decl. Christensen ¶12].

UMB has given no reasons for its failure to respond to any of the RFAs, interrogatories, or requests for production served on it on February 10, 2023. UMB's actions manifest a deliberate choice to not oppose discovery or participate or meaningfully defend this action. UMB Bank is represented by the same counsel as Shellpoint.  [Decl. Christensen ¶13].

**2. <u>SUMMARY JUDGMENT BASED ON DEEMED ADMISSIONS IS PROPER</u>**

Summary judgment or adjudication is proper based on matters deemed admitted for failure to respond to RFAs. The District Court has affirmed on appeal Judge Alan Jaroslovsky's granting summary judgment for a debtor against a creditor in an adversary proceeding for nondischargeability on the basis of default admissions being deemed established because creditor failed to respond to debtor's requests for admission:

> "Rule 36 is harsh in its consequences to the dilatory litigant. Failure to respond within the thirty-day timeframe automatically results in a material fact being deemed admitted and, in some cases, may subject the adverse party to a grant of summary judgment. *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007); *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995); see *O'Campo v. Hardisty*, 262 F.2d 621, 623-24 (9th Cir. 1958) (affirming grant of summary judgment based on unanswered requests for admissions). "Once admitted, the matter 'is conclusively established unless the court on motion permits withdrawal or amendment of the admission' pursuant to Rule 36(b)." *Conlon*, 474 F.3d at 621 (quoting Fed.R.Civ.P. 36(b)). Said otherwise, once the matter is deemed admitted, "even by default, the court may not consider evidence that is inconsistent with the admission." *Am. Gen. Life & Accident Ins. Co. v. Findley*, 2013 U.S. Dist. LEXIS 41644, 2013 WL 1120662, at *3 (C.D.Cal. March 15, 2013) (citing 999 v. C.I.T. Corp., 776 F.2d 866, 869-70 (9th Cir. 1985) ("Evidence inconsistent with a Rule 36 admission is properly excluded")).
>
> Here, the unanswered admission resulted in the automatic establishment of a material fact; Creditor did not rely on the alleged misrepresentations of Debtor. This deemed admission left Creditor unable to introduce contrary evidence to establish reliance. Creditor unwittingly precluded her fraud claims by means of noncompliance with the Federal Rules of Civil Procedure. While pro se litigants are entitled to certain leeway in the artfulness of pleading, the bankruptcy court was under no obligation to grant Creditor lenience with respect to the costs associated with failure to comply with the procedural requirements of Rule 36.
>
> *Warren v. Cybulski*, 556 B.R. 429, 435 (N.D. Cal. 2016)

Here, this result is not harsh because Shellpoint and UMB Bank plainly admit to facts establishing liability in their opposition briefs and the supporting declarations of Daniella Banks, dockets 286 and 377, which are discussed in detail below. This demonstrates that the failure to timely admit is not unintentional, but deliberate. Also, UMB and Shellpoint have previously admitted that these same exact errors of misapplying payments violate the stay and Rule 3002.1 in prior litigation in this case, dockets 151, 152. There are no grounds to relieve Shellpoint and UMB Bank of their deliberate conduct in failing to respond to RFAs as a strategic decision.

## AGENCY BETWEEN SHELLPOINT AND UMB BANK

UMB Bank's liability is premised on the agency relationship with its loan servicer

Case: 18-40285   Doc# 386   Filed: 08/23/23   Entered: 08/23/23 09:10:36   Page 11 of 32

Shellpoint. This agency is undisputed here because Shellpoint filed the notice of transfer of claim, Docket 68, on behalf of UMB Bank. Agency is also established by the following admissions deemed admitted:

    A. <u>REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT</u>

        **REQUEST FOR ADMISSION NO. 1**. Admit that YOU were the authorized agent to service the SUBJECT LOAN on behalf of UMB Bank, National Association, not in its individual capacity, but solely as Legal Title Trustee of PRL Title Trust I from May 2019 to December 2021.

    B. <u>REQUESTS FOR ADMISSION ADMITTED BY UMB BANK</u>

        **REQUEST FOR ADMISSION NO. 1.** Admit that Rushmore Loan Management LLC is the authorized agent to service the SUBJECT LOAN on behalf of UMB Bank, National Association, not in its individual capacity, but solely as Legal Title Trustee of PRL Title Trust I.

        **REQUEST FOR ADMISSION NO. 2.** Admit that Rushmore Loan Management LLC is the authorized agent to service the SUBJECT LOAN on behalf of UMB Bank, N.A.

        **REQUEST FOR ADMISSION NO. 3.** Admit that YOU are liable to DEBTOR for the actions of YOUR servicing agent Rushmore Loan Management LLC in servicing the SUBJECT LOAN.

        **REQUEST FOR ADMISSION NO. 4.** Admit that YOU are liable to DEBTOR for the actions of YOUR former servicing agent NEWREZ LLC dba Shellpoint Mortgage Servicing in servicing the SUBJECT LOAN.

        **REQUEST FOR ADMISSION NO. 5.** Admit that YOU have been the owner of the SUBJECT LOAN at all times since October 2019.

## DOCUMENTS ADMITTED ADMISSIBLE

This Motion for Summary Judgment is based on the exhibits attached here. All the evidence is admissible. There is no dispute of material fact that the following exhibits are genuine and admissible pursuant to RFAs deemed admitted by Shellpoint, RFAs 41-55: **Exhibits A, B, C, D, E, L, M, N, O, P, X, 27, 28, 33, 34**. The following exhibits are genuine and admissible pursuant to UMB Bank RFAs 69-96: **Exhibits A, B, C, D, E, F, G, I, J, K, L, M, N, O, P, S, T, V, W, X, Y, Z, 27, 28, 29, 30, 31, 32, 33, 34.** These RFAs are found in **Exhibits 60 & 61**.

## 3. <u>VIOLATION OF THE AUTOMATIC STAY</u>

Shellpoint and UMB Bank violated the automatic stay provisions of §362(a)(6) and §362(a)(1) because applying post-petition direct mortgage payments to pre-petition arrears escrow shortages from the POC are acts to "collect, assess, or recover a claim against the debtor that arose

before the commencement of the case under this title."

There is no dispute of material fact that Shellpoint and UMB Bank sent Debtor billing statements and a notice of mortgage payment change filed July 6, 2021, [**Exhibit B**] increasing the post-petition escrow payment from $402.19 to $679.77 to pay for pre-petition escrow arrears from the proof of claim in the amount of $6,860.42. It is undisputed that Debtor paid the increased payment amount of $1,995.28 which included the escrow amount of $679.77 for many months. [**Exhibits 27, 57, 58** Transaction Histories]. It is undisputed that this escrow shortage of $6,860.42 in or around July 2021 is the same thing as the "Advance Balance" of $6,135.74 shown on 1/14/2022 of the Transaction Current History, page 34, of [**Exhibit V**] attached here, that is the subject of various RFAs described down below.

Shellpoint and UMB Bank expressly admit in the declaration filed in support of Shellpoint's Opposition Shellpoint, by employee Daniella Banks that "The June 24, 2021 escrow analysis attached to the July 6, 2021 Notice of Payment Change included $6,860.42 in pre-petition arrears from the contractual history (which history does not distinguish between pre- and postpetition buckets). Those arrears should have been left to be satisfied through regular plan payments, but were instead nominally categorized as escrow "shortage"[.]" [Decl. of Banks February 8, 2023 ¶6a, Docket 286-1]. [**Exhibit 37**]. Banks also stated in the declaration that "Debtor's escrow debt in question was owed, but was mistakenly treated as post-rather than pre-petition." [Decl. of Banks February 8, 2023, ¶6, Docket 286-1]. [**Exhibit 37**].

Ms. Banks also admitted that "While the money debtor purportedly "overpaid" was prematurely requested by Shellpoint, it was still valid debt, and funds were applied to that debt. (Banks Decl., ¶ 6.)" [Opposition to Amended Motion for Sanctions, page 6, lines23-25, docket 377]. This is an admission that Shellpoint and UMB Bank collected a pre-petition debt post-petition in violation of the automatic stay as alleged in the Motion for Sanctions.

Shellpoint and UMB Bank admit that "the unfortunate, but relatively straightforward errors made in good faith here. The core allegation relates to an identifiable error baked into a disclosed escrow analysis and associated, filed notice of payment change. And the escrow debt in question was owed—but was inadvertently treated as post-rather than pre-petition. (Stern Decl., ¶ 4 & Ex. C;

Banks Decl., ¶ 6.)" [Opposition to Amended Motion for Sanctions, page 7, line 24- page 8 line 2 docket 377]. This is an admission of violating the stay.

In their opposition brief to the Motion for Sanctions [docket 286], and in their opposition brief to the Amended Motion for Sanctions [docket 377] Shellpoint and UMB Bank outright admit to the accounting errors Debtor alleges. Shellpoint states the Motion for sanctions is "based on inadvertent accounting errors Shellpoint has attempted to remedy in good faith." [Opposition of UMB Bank and Shellpoint, page 1 lines 7-8, Docket 377]. Shellpoint states "Shellpoint's counsel highlighted the inadvertent accounting errors" to Debtor's counsel. This is effectively an admission to having violated the stay. [Opposition of UMB Bank and Shellpoint, page 2 lines 13-14, Docket 377].

Creditors violated the automatic stay provisions of §362(a)(5) because to the extent that the post-petition direct payments may be determined to be property of the Debtor, taking these payments and applying them to pre-petition amounts is an act to enforce Creditors' lien, and these actions also violate 11 U.S.C. §362(a)(5) because it is an act to "create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." Debtor's home is property of the Debtor because it revested upon confirmation of the plan, and her mortgage payments are made with Debtor's property.

Creditors violated the automatic stay provisions of §362(a)(3) because holding trustee payment funds in suspense instead of applying them to the pre-petition loan arrearage is exercising control over property of the estate in an improper manner because the confirmed plan and the loan contracts all require applying the funds to the loan immediately. In addition, to the extent this Court is inclined to treat direct mortgage payments as plan payments, they would be considered property of the estate, and Creditors also violated the stay by holding those funds in suspense too long. *Mattox v. Wells Fargo, NA (In re Mattox)*, Nos. 07-51925, 10-5041, 2011 Bankr. LEXIS 3139, at *18-21 (Bankr. E.D. Ky. Aug. 17, 2011).

There is no dispute of material fact about the willfulness because Shellpoint and UMB Bank knew of the bankruptcy case at the time they took servicing of the loan because they filed a transfer of claim, and it is the subject of an RFA. There is no dispute of material fact that the application of

payments was willful because it was done by their employees and their servicing computer system.

The following RFAs that are deemed admitted by operation of law also establish that there is no dispute of material fact that Shellpoint and UMB Bank violated the stay willfully because they knew of the automatic stay and the acts were willful application of payments to the loan.

A. REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT

**REQUEST FOR ADMISSION NO. 2**. Regarding the amount of $6,135.74 shown in the "endescrowbal" column on the transaction date 12/17/2021 on the loan transaction history attached here as [Exhibit 27], admit that this amount represents an escrow shortage for amounts owed prior to the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 3**. Regarding the amount of $6,135.74 shown in the "endescrowbal" column on the transaction date 12/17/2021 on the loan transaction history attached here as [Exhibit 27], admit that this amount represents, in part, an escrow shortage for property taxes paid prior to the BANKRUPTCY CASE being filed.

**REQUEST FOR ADMISSION NO. 4**. Regarding the amount of $6,135.74 shown in the "endescrowbal" column on the transaction date 12/17/2021 on the loan transaction history attached here as [Exhibit 27], admit that at least part of this amount represents an escrow shortage for taxes and insurance paid by YOU or YOUR predecessors in interest during the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 23**. Admit that YOU knew of the automatic stay in this BANKRUPTCY CASE at the time YOU became the servicer of the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 24**. Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a).

**REQUEST FOR ADMISSION NO. 25**. Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a)(6).

**REQUEST FOR ADMISSION NO. 26.** Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a)(1).

**REQUEST FOR ADMISSION NO. 27**. Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a)(5).

**REQUEST FOR ADMISSION NO. 28**. Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a)(3).

**REQUEST FOR ADMISSION NO. 31**. Admit that that YOU applied some of DEBTOR'S post-petition direct mortgage payments to pay down pre-petition escrow arrears.

**REQUEST FOR ADMISSION NO. 32**. Admit that that YOU applied both the DEBTOR'S post-petition direct mortgage payments, and the funds YOU received from the chapter 13 Trustee to the oldest contractual due dates.

B. REQUESTS FOR ADMISSION ADMITTED BY UMB BANK

**REQUEST FOR ADMISSION NO. 8.** Regarding the "Advance Balance" of $6,135.74 shown on 1/14/2022 of the Transaction Current History, page 34, of **[Exhibit V]** attached here, admit that this amount represents an escrow shortage for

Case: 18-40285    Doc# 386    Filed: 08/23/23    Entered: 08/23/23 09:10:36    Page 15 of 32

amounts owed prior to the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 9.** Regarding the "Advance Balance" of $6,135.74 shown on 1/14/2022 of the Transaction Current History, page 34, of **[Exhibit V]** attached here, admit that this amount represents, in part, an escrow shortage for property taxes paid prior to the BANKRUPTCY CASE being filed.

**REQUEST FOR ADMISSION NO. 10.** Regarding the "Advance Balance" of $6,135.74 shown on 1/14/2022 of the Transaction Current History, page 34, of **[Exhibit V]** attached here, admit that at least part of this amount represents an escrow shortage for taxes and insurance paid by YOUR loan servicing agents during the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 11.** Regarding the amount of $1,995.28 that YOU applied to the loan on April 21, 2022, that YOU applied to the loan due date of April 1, 2022, as shown on page 28 of **[Exhibit V],** admit that these were funds that YOU received from the Chapter 13 Trustee and had held in suspense.

**REQUEST FOR ADMISSION NO. 12.** Admit that on February 28, 2022, YOU applied $679.77 of DEBTOR'S post-petition mortgage payment funds to reduce the pre-petition escrow shortage.

**REQUEST FOR ADMISSION NO. 13.** Admit that on January 31, 2022, YOU applied $679.77 of DEBTOR'S post-petition mortgage payment funds to reduce the pre-petition escrow shortage.

**REQUEST FOR ADMISSION NO. 47.** Admit that YOU knew of the automatic stay in this BANKRUPTCY CASE at the time YOU became the owner of the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 48.** Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a).

**REQUEST FOR ADMISSION NO. 49.** Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a)(6).

**REQUEST FOR ADMISSION NO. 50.** Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a)(1).

**REQUEST FOR ADMISSION NO. 51.** Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a)(5).

**REQUEST FOR ADMISSION NO. 52.** Admit that that YOU are liable to DEBTOR for violating the automatic stay, 11 U.S.C. §362(a)(3).

**REQUEST FOR ADMISSION NO. 55.** Admit that that YOU applied some of DEBTOR'S post-petition direct mortgage payments to pay down pre-petition escrow arrears.

**REQUEST FOR ADMISSION NO. 56.** Admit that that YOU applied both the DEBTOR'S post-petition direct mortgage payments, and the funds YOU received from the chapter 13 Trustee to the oldest contractual due dates.

## 4. <u>VIOLATION OF THE CONFIRMED PLAN</u>

Debtor seeks summary adjudication that Creditors are liable for violating the confirmed plan under §105 which authorizes this Court to enforce the terms of the Plan and award damages and remedies for the violation of the confirmed plan. *In re Ford*, 522 B.R. 842 (Bankr. D.S.C. 2015);

*United States v. Richman (In re Talbot)*, 124 F.3d 1201, (10th Cir. 1997); *In re Chappell*, 984 F.2d 775, (7th Cir. 1993); *Padilla v. GMAC Mortg. Corp. (In re Padilla)*, 389 B.R. 409, (Bankr. E.D. Pa. 2008). The confirmed plan here requires lenders to apply payments separately to pre-petition arrears and post-petition installments. Section 3.07 (a) of the confirmed plan in this case states "All arrears on Class 1 claims shall be paid in full by Trustee." Section 3.07(a)(2) of the confirmed plan states "The arrearage dividend must be applied by the Class 1 creditor to the arrears."

Creditors violated this provision of the plan when Shellpoint's accounting system of record did not separate out the pre-petition escrow arrears from the post-petition escrow funds paid by Debtor which resulted in the records showing a post-petition shortage of around $6,135.74 at the time Rushmore took over servicing of the Loan around February 2022. Shellpoint and UMB Bank violated the confirmed play by applying Debtor's post-petition direct payments to the pre-petition escrow arrears as shown in **[Exhibit G]** where they apply $679.77 per month of post-petition funds to the "Advance Balance" as shown in the highlighted and annotated entries on the Loan Transaction History. Rushmore, Shellpoint, and US Bank and UMB Bank applied trustee funds and debtor payments together to the oldest contractual due date as shown in **[Exhibit G]**.

These facts are admitted by Shellpoint in RFAs 2, 3, 4, 32 as shown in the preceding section of this Motion, and by UMB Bank RFAs 8, 9, 10, 11, 12, 13, 55, 56 shown above.

Courts have held that these accounting errors violate the confirmed plan: "In the accounting prepared by Wells Fargo and presented at trial, Wells Fargo applied Debtors' direct postpetition installment payments to those payments owed prepetition. This was in derogation of the plan, which required that the payment satisfy postpetition installments." *Jones v. Wells Fargo Home Mortg. (In re Jones I)*, 366 B.R. 584, 589 (Bankr. E.D. La. 2007).

In addition to the RFAs listed in the preceding paragraphs, the following RFAs deemed admitted establish there is no dispute of material fact on the violation of the confirmed plan.

A. <u>REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT</u>

**<u>REQUEST FOR ADMISSION NO. 29.</u>** Admit that that YOU are liable to DEBTOR for violating the terms of the confirmed chapter 13 plan in the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 30.** Admit that that YOU are liable to DEBTOR for violating the terms of the confirmed chapter 13 plan in the BANKRUPTCY CASE as alleged in the Motion for Sanctions, docket 274.

**REQUEST FOR ADMISSION NO. 31**. Admit that that YOU applied some of DEBTOR'S post-petition direct mortgage payments to pay down pre-petition escrow arrears.

**REQUEST FOR ADMISSION NO. 32**. Admit that that YOU applied both the DEBTOR'S post-petition direct mortgage payments, and the funds YOU received from the chapter 13 Trustee to the oldest contractual due dates.

B. <u>REQUESTS FOR ADMISSION ADMITTED BY UMB BANK</u>

**REQUEST FOR ADMISSION NO. 53.** Admit that that YOU are liable to DEBTOR for violating the terms of the confirmed chapter 13 plan in the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 54.** Admit that that YOU are liable to DEBTOR for violating the terms of the confirmed chapter 13 plan in the BANKRUPTCY CASE as alleged in the Motion for Sanctions, docket 274.

**REQUEST FOR ADMISSION NO. 55.** Admit that that YOU applied some of DEBTOR'S post-petition direct mortgage payments to pay down pre-petition escrow arrears.

**REQUEST FOR ADMISSION NO. 56.** Admit that that YOU applied both the DEBTOR'S post-petition direct mortgage payments, and the funds YOU received from the chapter 13 Trustee to the oldest contractual due dates.

**REQUEST FOR ADMISSION NO. 55.** Admit that that YOU applied some of DEBTOR'S post-petition direct mortgage payments to pay down pre-petition escrow arrears.

**REQUEST FOR ADMISSION NO. 56.** Admit that that YOU applied both the DEBTOR'S post-petition direct mortgage payments, and the funds YOU received from the chapter 13 Trustee to the oldest contractual due dates.

**5. <u>CONTEMPT FOR VIOLATION OF STIPULATED SETTLEMENT ORDER</u>**

Debtor requests that the Court find Shellpoint and UMB Bank and Rushmore and US Bank in contempt of the Stipulated Settlement Order **[Exhibit A]** for failing to waive the post-petition escrow shortage. Court orders may be enforced through the contempt power. Shellpoint and UMB Bank were signatories to the Stipulated Settlement Order.

The rule for contempt is this: "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Renwick v.*

Case: 18-40285   Doc# 386   Filed: 08/23/23   Entered: 08/23/23 09:10:36   Page 18 of 32

*Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)

The essential elements of a contempt action are that 1) there was a valid order, 2) there was knowledge of the order, and 3) a violation of the order occurred. *Wynne v. Aurora Loan Servs., LLC (In re Wynn)*, 422 B.R. 763, 769 (Bankr. M.D. Fla. 2010).

Here, there is no material dispute that the valid order is the Order approving the settlement stipulation after the first Motion to Enforce filed in this case. That Stipulation is docket 151, and the Order is docket 152. **[Exhibit A]**.  Creditors had knowledge of the order because they signed off on it and received the ECF notice.

The stipulated order provides that "The proper amount of the monthly direct mortgage payment due from the petition date through November 30, 2020 is $1,634.69 each month. Responding Party Creditors' entitlement to receive any amount more than this until they file a valid notice of mortgage payment change is hereby waived." **[Exhibit A]**.

Creditors violated the order by not waiving post-petition escrow shortages as promised, as admitted in the RFAs deemed admitted and the accounting ledgers that have been admitted to be genuine and admissible as set forth here below.  **Exhibits 27, 56, 57, 58** are various versions of Shellpoint's loan transaction history from their computer servicing system of record and it can easily be seen that there was never any manual adjustments made to the escrow account or the principal or interest account after the Stipulated Settlment Order was entered on October 15, 2020, because the only changes to those columns and rows are from the application of payments by the Debtor or trustee. These documents speak for themselves on this point. Creditors produced these documents and there is no dispute as to their authenticity or admissibility, regardless of the deemed admitted RFAs.  Liability is therefore established, and the only dispute of fact is the amount of damages caused by the failure, which is the amount of principal, interest, and escrow that was required to be waived, which will be established by expert testimony at trial.

The stipulated Order provides that "Shellpoint will adjust the unpaid principal balance owed on Debtor's Loan to $270,622.20 as of October 6, 2020, in Shellpoint's system of record." Shellpoint failed to do so in violation of the Order.  There is no dispute of material fact that Shellpoint failed to do this. Shellpoint and UMB Bank admit that "Shellpoint manually adjusted the

Case: 18-40285   Doc# 386   Filed: 08/23/23   Entered: 08/23/23 09:10:36   Page 19 of 32

unpaid principal balance—which was documented to counsel in 2020—but both sides unfortunately missed an apparent scrivener's error. The scrivener's error resulted in a $40 discrepancy in the unpaid principal balance ($270,662.20 instead of $270,622.20). Because Shellpoint no longer services debtor's loan, it is only able to produce a retroactive accounting to Rushmore, so it can in turn provide debtor with a $40 credit." [Decl. Banks, Feb. 8, 2023, ¶5a, Docket 286-1]. There is a dispute over whether this can be characterized as a "scriveners error" but that adjective is not material.

A. REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT

**REQUEST FOR ADMISSION NO. 33**. Admit that that YOU are liable to Debtor for violating the Stipulated Order attached here as [Exhibit A].
**REQUEST FOR ADMISSION NO. 34.** Admit that YOU violated the Stipulated Order attached here as [Exhibit A] by failing to waive the post-petition escrow shortage as required by the Order.
**REQUEST FOR ADMISSION NO. 35**. Admit that as of February 2022, YOU had not made an adjusting entry in YOUR servicing system of record to the principal, interest, or escrow on the SUBJECT LOAN to waive all amounts due under the contract that are more than $1,634.69 per month from March 2018 through November 30, 2020.
**REQUEST FOR ADMISSION NO. 38**. Admit that YOU did not waive any escrow shortage that accrued at any time during the BANKRUPTCY CASE.
**REQUEST FOR ADMISSION NO. 39**. Admit that YOU did not waive any post-petition escrow as required by the Stipulation attached here as [Exhibit A].
**REQUEST FOR ADMISSION NO. 40.** Admit that between July 2019 and June 2022 YOU did not make any entries in your loan servicing system of record to waive any escrow shortage that accrued during the BANKRUPTCY CASE.

B. REQUESTS FOR ADMISSION ADMITTED BY UMB BANK

**REQUEST FOR ADMISSION NO. 57.** Admit that that YOU are liable to Debtor for violating the Stipulated Order attached here as **[Exhibit A]**.
**REQUEST FOR ADMISSION NO. 58.** Admit that that YOU violated the Stipulated Order attached here as **[Exhibit A]** by failing to waive the post-petition escrow shortage as required by the Order.
**REQUEST FOR ADMISSION NO. 59.** Admit that as of February 2022, YOU had not made an adjusting entry in YOUR servicing system of record to the principal, interest, or escrow on the SUBJECT LOAN to waive all amounts due under the contract that are more than $1,634.69 per month from March 2018 through November 30, 2020.
**REQUEST FOR ADMISSION NO. 62.** Admit that YOU did not waive any escrow shortage that accrued at any time during the BANKRUPTCY CASE.
**REQUEST FOR ADMISSION NO. 63.** Admit that YOU did not waive any post-petition escrow as required by the Stipulation attached here as **[Exhibit**

**A]**.

**REQUEST FOR ADMISSION NO. 64.** Admit that between July 2019 and June 2022 YOU did not make any entries in your loan servicing system of record to waive any escrow shortage that accrued during the BANKRUPTCY CASE.

UMB Bank is only entitled to have collected $13,272.27 in escrow funds from Debtor from March 2018 through November 2020, which is $402.19 per month pursuant to the stipulated order. There is no material dispute of fact there because that is calculated by the terms of the Stipulated Order. As of November 2020, any escrow deficiency (or advance balance) must be zeroed out pursuant to the settlement because any such escrow shortage was expressly waived in the Stipulated Order. However, US Bank, UMB Bank, Shellpoint, and Rushmore are all in contempt of the stipulated order by having not zeroed out the escrow account and by charging Debtor for the escrow shortage caused post-petition by Creditors' failures to properly account for escrow and failure to give proper Rule 3002.1 notices. The loan transaction histories **Exhibits 27, 56, 57, 58** demonstrate that there was no zeroing out of the escrow balance on account of funds waived by the servicer at any time. There is no genuine dispute of this material fact.

## 6. <u>VIOLATION OF BANKRUPTCY RULE 3002.1</u>

Creditors failed to include all post-petition escrow charges under Rule 3002.1 in proper and timely notices required by the Rule. This is why there is a post-petition escrow shortage in Rushmore's loan transaction history was carried over from Shellpoint.

There is no genuine dispute of material fact that Debtor has paid all the installments required by the valid Rule 3002.1 notices of mortgage payment change ("NOMPC") during the time Shellpoint and UMB Bank owned and serviced the loan, which is evidenced by Shellpoint's Response to the final cure. [**Exhibit 64**]. There is no dispute of material fact that there is currently a claimed post-petition escrow shortage of over $6,135.74 from the last notice of mortgage payment change dated June 23, 2022 [**Exhibit C**] that was made and then withdrawn by Rushmore, [**Exhibit D**]. There is no dispute of material fact that the escrow shortage advance balance of $6,135.74 came from Shellpoint. This shortage of $6,135.74 is shown in **Exhibit V** on page 34, in the row named

"Advance Balance" with the first entry on 1/14/2022.

The NOMPC **Exhibit C** from June 23, 2022, increased the escrow payment from $679.77 to $1,087.47 on account of an escrow analysis statement attached to the NOMPC, which shows on page 5 of 7 that the "Escrow Balance Comparison" has a negative $6,135.74 balance. Rushmore withdrew the notice 3 months later on September 14, 2022, [**Exhibit D**] after being confronted with the problem by Debtor in June 2022, and the escrow payment has stayed at the old $679.77 since that time, meaning that it has not been fixed, or waived. The amount of $6,135.74 is still considered by Rushmore to be owed because in the Rule 2004 examination of Rushmore in this case, Rushmore testified that they have not waived any of this balance from the loan:

> Q. And you also previously testified that that
> $6,000 escrow shortage that came over when Shellpoint
> transferred it to you has not been waived by Rushmore;
> correct?
> A. I said I didn't -- that we were still looking
> into the correct amount, but nothing has been waived or
> anything.
> Q. Right.
> A. It's just not being -- there's nothing being
> waived at the time, because we're still investigating. [Transcript, Rushmore 2004 Examination 1.25.2023, page 108].

Rule 3002.1 (i) states the consequences for Creditor's failure to provide notice of all post-petition fees or payment changes: "If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions: (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure."

Therefore, the Court should enter summary adjudication that Creditors are liable for violating Rule 3002.1 and that they are precluded from introducing any omitted information about an escrow amount owed post-petition at any time Shellpoint services the loan and UMB Bank owned the loan.

Shellpoint and UMB Bank violated Rule 3002.1 by charging 5% interest, by increasing it

16

from the allowed 4.75% that is in the notice of mortgage payment change filed May 8, 2019, and December 11, 2020, both of which purport to change the "current interest rate" from 4.27% to $4.75%. While this is obviously an error that the rate change is included in two different notices, it is still the maximum that can be charged. There is no dispute of material fact that Shellpoint and UMB Bank charged 5% interest: Shellpoint and UMB Bank admit that "Shellpoint arrived at the $1,717.70 stipulated payment amount by manually tweaking numbers in its system, resulting in debtor being nominally charged 5% interest. In other words, instead of adjusting the escrows, Shellpoint listed the interest rate as 5% to ensure the numbers aligned and that monthly payment was set to $1,717.70." [Decl. of Banks February 8, 2023 ¶4b, Docket 286-1].

This 5% interest was carried over to Rushmore from Shellpoint, which is why the billing statements show Rushmore is charging 5%, [**Exhibit J**] but there has been no notice of this change in any 3002.1 notice.

A. <u>REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT</u>

**REQUEST FOR ADMISSION NO. 36**. Admit that that YOU are liable to Debtor for violating Bankruptcy Rule 3002.1.
<u>**REQUEST FOR ADMISSION NO. 37.**</u> Admit that that YOU are liable to Debtor for violating Bankruptcy Rule 3002.1 as described in the Motion for Sanctions, Docket 274.

B. <u>REQUESTS FOR ADMISSION ADMITTED BY UMB BANK</u>

**REQUEST FOR ADMISSION NO. 38.** Admit that the billing statements attached as [**Exhibit J**] for October and November 2022 state the wrong due date of 01/01/2023.
**REQUEST FOR ADMISSION NO. 39.** Admit that the billing statements attached as [**Exhibit J**] for October and November 2022 state the incorrect amount due.
**REQUEST FOR ADMISSION NO. 40.** Admit that YOU are charging 5% interest on the SUBJECT LOAN as of January 2023.
**REQUEST FOR ADMISSION NO. 60.** Admit that that YOU are liable to Debtor for violating Bankruptcy Rule 3002.1.
**REQUEST FOR ADMISSION NO. 61.** Admit that that YOU are liable to Debtor for violating Bankruptcy Rule 3002.1 as described in the Motion for Sanctions, Docket 274.

Therefore, this Court may enter judgment that Shellpoint and UMB Bank are liable for violating Rule 3002.1 by not filing notices of payment change to increase the interest rate to 5%,

17

and order that Creditors are precluded from introducing evidence of any amounts owed at any other rate besides 4.25% or 4.75% as shown in the notices of mortgage payment change, and that any evidence of a rate being at 5% is precluded, including not just the rate shown on the papers, but any interest calculated at that amount.

## 7. CONTEMPT OF THE DISCHARGE INJUNCTION §524(I).

Debtor received her discharge by order entered July 28, 2023, docket 372. Section 524(i) provides that "The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor." 11 U.S.C. §524(i).

"There are two requirements to establish a violation of this section: 1) a willful failure to credit payments received under a confirmed plan and 2) material injury to the debtor. As in § 362(k), the first requirement of willfulness is simply an intent to commit the act; it does not require a specific intent to violate the Code or plan provisions. It only requires a showing that the creditor intended to credit payments improperly. "Absent a creditor's proof that the improper crediting was a mistake in conflict with the creditor's normal procedures, the creditor should be presumed to have intended its acts." 4 Collier on Bankruptcy ¶524.08 (16th ed.)(hereinafter "Collier"). *In re Ridley*, 572 B.R. 352, 361-62.

There is no genuine dispute of material fact that Shellpoint and UMB Bank willfully failed to apply the payments from Debtor and the Trustee according to the confirmed plan, but rather pooled both payments together and applied them to the oldest contractual due dates, and held them in suspense for long periods. On Shellpoint's loan transaction history **Exhibit 27**, it shows that there is a running balance in the suspense account in the column titled "endescrowbal" and that there is constantly a balance there, including times when it was much larger than the amount needed to apply to a full arrears installment, including the time from November 6, 2020, when the suspense balance was $2,187.92 but the payment was only $1,634.69 at the time, and the suspense balance stayed

over that amount until December 18, 2020, and then was higher than that amount again in October and November 2021.

Here, the material injury is shown by the overcharging in mortgage payments with an excessive escrow amount each month, and having to bring this motion, and that there is still a post-petition escrow shortage of over $6,135.74 from the withdrawn notice of mortgage payment change.

The remedy for violation of the discharge injunction §524(i) is contempt. The Supreme Court ruled that the legal standard for contempt is an objective standard: "a court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019).

Here, Creditors violated §524(i) because they willfully failed to credit Debtors post-petition installments to his post-petition contractual due dates as required by the confirmed plan, and instead applied them to the pre-petition arrears installments. This was done while the confirmed plan was not revoked, the plan was not in default, and Creditors had received payments required to be made under the plan because Debtor has made all direct mortgage payments and trustee plan payments. Creditors violated §524(i) by holding funds in suspense.

Summary judgment is also appropriate based on the following RFAs deemed admitted:

A. <u>REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT</u>

**REQUEST FOR ADMISSION NO. 31**. Admit that that YOU applied some of DEBTOR'S post-petition direct mortgage payments to pay down pre-petition escrow arrears.
**REQUEST FOR ADMISSION NO. 32**. Admit that that YOU applied both the DEBTOR'S post-petition direct mortgage payments, and the funds YOU received from the chapter 13 Trustee to the oldest contractual due dates.

B. <u>REQUESTS FOR ADMISSION ADMITTED BY UMB BANK</u>

**REQUEST FOR ADMISSION NO. 55**. Admit that that YOU applied some of DEBTOR'S post-petition direct mortgage payments to pay down pre-petition escrow arrears.
**REQUEST FOR ADMISSION NO. 56.** Admit that that YOU applied both the DEBTOR'S post-petition direct mortgage payments, and the funds YOU

received from the chapter 13 Trustee to the oldest contractual due dates.

### 8. <u>TILA AND CFPB REGULATION Z</u>

Creditors and US Bank and UMB Bank violated TILA and related CFPB Regulation Z by sending inaccurate and nonconforming monthly billing statements. TILA 15 U.S.C. § 1638(f) requires monthly mortgage statements with certain requirements. This law is implemented by CFPB Regulations under 12 C.F.R. § 1026.41 with the detailed requirements for the monthly statements. These laws are enforceable through Title 15 U.S.C. § 1640, which provides for actual damages and attorney's fees. Violations of CFPB Regulation Z are enforceable because it effectuates TILA: "[I]f the regulation simply effectuates the express mandates of the controlling statute, then the regulation may be enforced via the private cause of action available under that statute." *Canizales v. Firm*, No. SACV 22-00208 JVS (DFMx), 2022 U.S. Dist. LEXIS 92786, at *6 (C.D. Cal. Apr. 20, 2022).

The RFAs deemed admitted here establish that Shellpoint and UMB Bank are creditors within the meaning of TILA and Regulation Z and is an assignee of the original lender and is liable to Debtor under 15 U.S.C. §1641. Debtor's mortgage loan is a closed end consumer credit transaction secured by a dwelling under 15 U.S.C. §1026.41(a).

Creditors violated 15 U.S.C. §1026.41(a)(2) because UMB Bank, Shellpoint did not send billing statements of any kind for most of the bankruptcy case in violation of TILA and Regulation Z. Summary judgment on liability here is supported by the following RFAs deemed admitted:

A. <u>REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT</u>

**REQUEST FOR ADMISSION NO. 6.** Admit that YOU are a loan servicer within the meaning of the Truth in Lending Act, ("TILA").
**REQUEST FOR ADMISSION NO. 7.** Admit that YOU are a loan servicer within the meaning of the Consumer Financial Protection Bureau Regulation Z.
**REQUEST FOR ADMISSION NO. 8.** Admit that the SUBJECT LOAN is DEBTOR'S home mortgage on her single-family residence.
**REQUEST FOR ADMISSION NO. 9.** Admit that 15 U.S.C. §1638(f) applies to YOU and the SUBJECT LOAN.
**REQUEST FOR ADMISSION NO. 10.** Admit that 15 U.S.C. §1640 applies to YOU and the SUBJECT LOAN.
**REQUEST FOR ADMISSION NO. 11.** Admit that 12 C.F.R. § 1026.41 applies to YOU and the SUBJECT LOAN.
**REQUEST FOR ADMISSION NO. 12.** Admit that UMB Bank, N.A. is a creditor within the meaning of the Truth in Lending Act as it relates to 15 U.S.C.

§1638(f) as to the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 13**. Admit that the SUBJECT LOAN is a closed end consumer credit transaction within the meaning of TILA 15 U.S.C. §1026.41(a).

**REQUEST FOR ADMISSION NO. 14.** Admit that UMB Bank, N.A. is an assignee within the meaning of the Truth in Lending Act, including 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 15**. Admit that DEBTOR is a consumer within the meaning of the Truth in Lending Act, as it relates to 15 U.S.C. §1638(f) and 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 16**. Admit that the SUBJECT PROPERTY is a "dwelling" within the meaning of the Truth in Lending Act as it relates to 15 U.S.C. §1638(f) and 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 17.** Admit that the SUBJECT LOAN is a residential mortgage transaction within the meaning of the Truth in Lending Act as it relates to 15 U.S.C. §1638(f) and 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 18.** Admit that YOU are a servicer within the meaning of the Truth in Lending Act as it relates to 15 U.S.C. §1638(f) and 15 U.S.C. §1640.

B. <u>REQUESTS FOR ADMISSION ADMITTED BY UMB BANK</u>

**REQUEST FOR ADMISSION NO. 15.** Admit that Rushmore Loan Management Services LLC is a loan servicer within the meaning of the Truth in Lending Act, ("TILA").

**REQUEST FOR ADMISSION NO. 16.** Admit that Rushmore Loan Management Services LLC is a loan servicer within the meaning of the Consumer Financial Protection Bureau Regulation Z.

**REQUEST FOR ADMISSION NO. 18.** Admit that NewRez LLC dba Shellpoint Mortgage Servicing is a loan servicer within the meaning of the Truth in Lending Act, ("TILA")

**REQUEST FOR ADMISSION NO. 19.** Admit that NewRez LLC dba Shellpoint Mortgage Servicing is a loan servicer within the meaning of the Consumer Financial Protection Bureau Regulation Z.

**REQUEST FOR ADMISSION NO. 20.** Admit that the SUBJECT LOAN is DEBTOR'S home mortgage on her single-family residence.

**REQUEST FOR ADMISSION NO. 21.** Admit that 15 U.S.C. §1638(f) applies to YOU and the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 22.** Admit that 15 U.S.C. §1640 applies to YOU and the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 23.** Admit that 12 C.F.R. § 1026.41 applies to YOU and the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 24.** Admit that 15 U.S.C. §1638(f) applies to RUSHMORE and the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 25.** Admit that 15 U.S.C. §1640 applies to RUSHMORE and the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 26.** Admit that 12 C.F.R. § 1026.41

applies to RUSHMORE and the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 27.** Admit that 15 U.S.C. §1638(f) applies to SHELLPOINT and the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 28.** Admit that 15 U.S.C. §1640 applies to SHELLPOINT and the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 29.** Admit that 12 C.F.R. § 1026.41 applies to SHELLPOINT and the SUBJECT LOAN.

**REQUEST FOR ADMISSION NO. 30.** Admit that YOU are a creditor within the meaning of the Truth in Lending Act as it relates to 15 U.S.C. §1638(f).

**REQUEST FOR ADMISSION NO. 31.** Admit that the SUBJECT LOAN is a closed end consumer credit transaction within the meaning of TILA 15 U.S.C. §1026.41(a). LA").

**REQUEST FOR ADMISSION NO. 32.** Admit that YOU are an assignee within the meaning of the Truth in Lending Act, including 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 33.** Admit that DEBTOR is a consumer within the meaning of the Truth in Lending Act, as it relates to 15 U.S.C. §1638(f) and 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 34.** Admit that the SUBJECT PROPERTY is a "dwelling" within the meaning of the Truth in Lending Act as it relates to 15 U.S.C. §1638(f) and 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 35.** Admit that the SUBJECT LOAN is a residential mortgage transaction within the meaning of the Truth in Lending Act as it relates to 15 U.S.C. §1638(f) and 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 36.** Admit that SHELLPOINT is a servicer within the meaning of the Truth in Lending Act as it relates to 15 U.S.C. §1638(f) and 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 37.** Admit that RUSHMORE is a servicer within the meaning of the Truth in Lending Act as it relates to 15 U.S.C. §1638(f) and 15 U.S.C. §1640.

**REQUEST FOR ADMISSION NO. 38.** Admit that the billing statements attached as [**Exhibit J**] for October and November 2022 state the wrong due date of 01/01/2023.

**REQUEST FOR ADMISSION NO. 39.** Admit that the billing statements attached as [**Exhibit J**] for October and November 2022 state the incorrect amount due.

**REQUEST FOR ADMISSION NO. 40.** Admit that YOU are charging 5% interest on the SUBJECT LOAN as of January 2023.

## 9. RESPA AND CFPB REGULATION X

Creditors are liable for violations of the Real Estate Settlement Procedures Act "RESPA" under 12 U.S.C. §2614 for violating 12 U.S.C. §2605. Debtor may enforce her rights under RESPA by private right of action under §2605(f). CFPB Regulation X, 12 CFR §1024.17 implements these RESPA statutes. Failure to comply with Regulation X is a violation of RESPA 12 U.S.C.

§2605(k)(1)(E). *Canizales v. Firm*, No. SACV 22-00208 JVS (DFMx), 2022 U.S. Dist. LEXIS 92786, at *6-7 (C.D. Cal. Apr. 20, 2022).

There is no material dispute of fact that Shellpoint is a servicer within the meaning of RESPA because they service the loan for UMB Bank, which is admitted in opposition briefs and by deemed admitted RFAs. There is no material dispute that Debtor's home mortgage loan on her single family residence falls under RESPA.

Shellpoint violated RESPA 12 U.S.C. §2605(l) by improperly placing two policies for force-placed insurance without a reasonable basis, and without written notice to borrower.

Shellpoint violated RESPA 12 U.S.C. §2605(f)(2) by not refunding Debtor the surplus escrow funds that they overcharged her during 2020-2022 because they overcharged Debtor at least $119 per month during 2022, which exceeds the allowed amount under RESPA of $1/12^{th}$ the yearly escrow and $1/6^{th}$ the yearly escrow amount as a cushion, and Shellpoint had more than $50 surplus in the account.

Shellpoint violated 12 CFR §1024.17(c) by overcharging Debtor more than $6,000 in escrow payments from 2020 thorough 2022 because this was more than the $1/12^{th}$ amount allowed, and more than the $1/6^{th}$ amount of allowed cushion. There is no dispute of material fact that Debtor's property taxes are $5,467.82 per year. **[Exhibit E]**. Debtor's homeowners' insurance is about $1,262 per year. **[Exhibit F]**. Adding these together and dividing by 12 months shows that the escrow payment should be about $560 per month, instead of the $679.77 Shellpoint and UMB charged according to the notice of mortgage payment change dated July 6, 2021. **[Exhibit B]**. UMB Bank, and its servicers Shellpoint and Rushmore have over-charged Debtor at least $129 per month on escrow for the last two years, from August 2021 through December 2022. There is no dispute of fact that the POC included a "Projected escrow shortage" of $2,832.83 which should have been the future RESPA cushion for the escrow account, which means Shellpoint and UMB Bank cannot charge Debtor for that post-petition, so they are limited to the $560 per month necessary to cover taxes and insurance only without the reserve.

Shellpoint violated 12 CFR §1024.17(f)(3)(ii) by charging over $6,345.88 perceived and erroneous escrow shortage by overcharging Debtor about $119 per month some months, and over

$500 too much for at least two months.  Summary adjudication on liability is supported by the following RFAs deemed admitted:

A. REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT

**REQUEST FOR ADMISSION NO. 5**. Admit that YOU are a loan servicer within the meaning of the Real Estate Settlement Procedures Act, ("RESPA").
**REQUEST FOR ADMISSION NO. 8.** Admit that the SUBJECT LOAN is DEBTOR'S home mortgage on her single-family residence.
**REQUEST FOR ADMISSION NO. 19.** Admit that the Real Estate Settlement Procedures Act applies to YOU and the SUBJECT LOAN.
**REQUEST FOR ADMISSION NO. 20.** Admit that the Real Estate Settlement Procedures Act 12 U.S.C. §2614 and 12 U.S.C. §2605 apply to YOU and the SUBJECT LOAN.


B. REQUESTS FOR ADMISSION ADMITTED BY UMB BANK

**REQUEST FOR ADMISSION NO. 6.** Admit that YOUR servicing agent Rushmore Loan Management LLC received the letter from DEBTOR attached here as **[Exhibit Y]**.
**REQUEST FOR ADMISSION NO. 7.** Admit that YOUR servicing agent Rushmore Loan Management LLC received the letter from DEBTOR dated June 24, 2022, attached hereto as **Exhibit 29**.

Exhibit Y is a RESPA notice of error letter sent by Debtor to Rushmore on June 9, 2022.

Exhibit 29 is a RESPA notice of error letter from Debtor to Rushmore dated June 24, 2022.

**REQUEST FOR ADMISSION NO. 14.** Admit that Rushmore Loan Management Services LLC is a loan servicer within the meaning of the Real Estate Settlement Procedures Act, ("RESPA").
**REQUEST FOR ADMISSION NO. 17.** Admit that NewRez LLC dba Shellpoint Mortgage Servicing is a loan servicer within the meaning of the Real Estate Settlement Procedures Act, ("RESPA").

**REQUEST FOR ADMISSION NO. 38.** Admit that the billing statements attached as [**Exhibit J**] for October and November 2022 state the wrong due date of 01/01/2023.
**REQUEST FOR ADMISSION NO. 39.** Admit that the billing statements attached as [**Exhibit J**] for October and November 2022 state the incorrect amount due.
**REQUEST FOR ADMISSION NO. 40.** Admit that YOU are charging 5% interest on the SUBJECT LOAN as of January 2023.
**REQUEST FOR ADMISSION NO. 42.** Admit that YOU did not fix the errors identified by DEBTOR in her letter to YOUR servicing agent RUSHMORE, attached here as **[Exhibit Y]** within 30 days of receiving the letter.
**REQUEST FOR ADMISSION NO. 43.** Admit that YOU did not fix the errors identified by DEBTOR in her letter to YOUR servicing agent RUSHMORE,

Case: 18-40285   Doc# 386   Filed: 08/23/23   Entered: 08/23/23 09:10:36   Page 30 of 32

attached here as **[Exhibit Y]** within 6 days of receiving the letter.

    **REQUEST FOR ADMISSION NO. 44.** Admit that the Real Estate Settlement Procedures Act applies to YOU and the SUBJECT LOAN.

    **REQUEST FOR ADMISSION NO. 45.** Admit that the Real Estate Settlement Procedures Act 12 U.S.C. §2614 and 12 U.S.C. §2605 apply to YOU and the SUBJECT LOAN.

## 10.  FDCPA

Creditors violated the FDCPA by sending improper and inaccurate monthly billing statements and by giving incorrect and misleading information to Debtor on the phone and through her counsel that the payment was $1,717.70 back in 2020.   The FDCPA prohibits debt collectors "from making false or misleading representations and from engaging in various abusive and unfair practices." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); see also 15 U.S.C. § 1692(e). "The FDCPA is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008).

"In order for a plaintiff to recover under the FDCPA, there are three threshold requirements: (1) the plaintiff must be a 'consumer'; (2) the defendant must be a 'debt collector'; and (3) the defendant must have committed some act or omission in violation of the FDCPA." *Robinson v. Managed Accts. Receivables Corp.*, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009).

There is no dispute of material fact that Debtor is a consumer within the meaning of the statute because she is a natural person obligated to pay the mortgage debt. There is no dispute that Shellpoint is a debt collector within the meaning of 15 U.S.C. §1692a because they use mail in their principal business purpose of collecting the mortgage loan debt, and which collects Debtor's payments on behalf of UMB Bank, the owner of the mortgage loan as made in judicial admissions in opposition briefs, and in the Stipulated Settlement Order.

Shellpoint violated 15 U.S.C. §1692f  by failing to waive the escrow shortage after November 2020 as required by the Stipulated Settlement Order, which undisputed facts are explained herein above in the preceding sections. Shellpoint violated the FDCPA by sending inaccurate notices of mortgage payment change with the bankruptcy court pursuant to Bankruptcy

Rule 3002.1 on May 8, 2019, purporting to make the increased payment retroactive by about five months. **[Exhibit 33]**. Summary adjudication is based on the following RFAs deemed admitted:

A. <u>REQUESTS FOR ADMISSION ADMITTED BY SHELLPOINT</u>

> **<u>REQUEST FOR ADMISSION NO. 21.</u>** Admit that that DEBTOR is a consumer within the meaning of the Fair Debt Collection Practices Act.
> **<u>REQUEST FOR ADMISSION NO. 22</u>**. Admit that that YOU are a debt collector within the meaning of the Fair Debt Collection Practices Act.

B. <u>REQUESTS FOR ADMISSION ADMITTED BY UMB BANK</u>

> **REQUEST FOR ADMISSION NO. 38.** Admit that the billing statements attached as [**Exhibit J**] for October and November 2022 state the wrong due date of 01/01/2023.
> **REQUEST FOR ADMISSION NO. 39.** Admit that the billing statements attached as [**Exhibit J**] for October and November 2022 state the incorrect amount due.
> **REQUEST FOR ADMISSION NO. 40.** Admit that YOU are charging 5% interest on the SUBJECT LOAN as of January 2023.
> **REQUEST FOR ADMISSION NO. 46.** Admit that that DEBTOR is a consumer within the meaning of the Fair Debt Collection Practices Act.

## <u>CONCLUSION</u>

Debtor requests that the Court grant this motion for summary judgment and summary adjudication by entering an order that UMB Bank and Shellpoint are liable to Debtor on all claims for relief in the Motion. The trial will proceed as to Creditors on the amount of damages.

DATED: August 23, 2023

/s/ Andrew J. Christensen

Andrew J. Christensen
Attorney for Debtor Ayo Akatugba

Case: 18-40285    Doc# 386    Filed: 08/23/23    Entered: 08/23/23 09:10:36    Page 32 of 32